IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| OREGON NATURAL DESERT ASS'N and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>    Plaintiffs,<br><br>  vs.<br><br>D. ROBERT LOHN, Regional Administrator, Nat'l Marine Fisheries Serv., NAT'L MARINE FISHERIES SERV., CARLOS M. GUTIERREZ, Secretary, U.S. Department of Commerce, DAVID R. ALLEN, Regional Director, U.S. Fish and Wildlife Service, GARY S. MILLER, Field Supervisor, U.S. Fish and Wildlife Service, U.S. FISH AND WILDLIFE SERVICE, and DIRK KEMPTHORNE, Secretary, U.S. Department of the Interior,<br><br>    Defendants. | Civil Case No. 06-946-KI<br><br>OPINION AND ORDER ON ATTORNEY FEES AND COSTS |

Kristin F. Ruether
Peter M. Lacy
Oregon Natural Desert Association
917 SW Oak Street, Suite 409
Portland, Oregon  97205

Stephanie M. Parent
Pacific Environmental Advocacy Center
10015 SW Terwilliger Blvd.
Portland, Oregon  97219

    Attorneys for Plaintiffs

Jill S. Gelineau
Schwabe, Williamson & Wyatt, P.C.
PacWest Center
1211 SW Fifth Avenue, Suite 1900
Portland, Oregon  97204

M. Reed Hopper
Damien M. Schiff
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, California  95834-1909

    Attorneys for Applicant Defendant-Intervenors

Karin J. Immergut
United States Attorney
District of Oregon
Stephen J. Odell
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Ronald J. Tenpas
Acting Assistant Attorney General
Jean E. Williams
Lisa L. Russell

-and-

      Meredith L. Flax
      U.S. Department of Justice
      Environment & Natural Resources Division
      Wildlife & Marine Resources Section
      Ben Franklin Station
      P. O. Box 7369
      Washington, D. C. 20044-7369

           Attorneys for Federal Defendants

KING, Judge:

Plaintiffs Oregon Natural Desert Association and Center for Biological Diversity move pursuant to the Equal Access to Justice Act ("EAJA") for an award of $80,471.42 in attorneys' fees and costs (#80). Defendants National Marine Fisheries Service ("NMFS") and the U.S. Fish & Wildlife Service ("FWS") (collectively, "federal defendants") oppose plaintiffs' motion.

## PROCEDURAL BACKGROUND

On April 17, 2007, this Court issued a judgment declaring NMFS' 2006 Biological Opinions ("BiOp") and FWS' 2005-06 BiOp to be in violation of the Endangered Species Act. Soon thereafter federal defendants filed a Motion to Alter or Amend the Court's Final Judgment arguing that the case was rendered moot with the issuance of new 2007-2011 consultation documents. At a telephone conference on May 31, 2007, I agreed based on American Rivers v. NMFS, 126 F.3d 1118 (9th Cir. 1997), and Idaho Dep't of Fish & Game v. NMFS, 56 F.3d 1071 (9th Cir. 1995). Nevertheless, I declined to vacate the Opinion and Order issued in April. On June 12, 2007, the Court entered an amended judgment vacating the April 16, 2007 judgment and ordering the case dismissed on mootness grounds.

## LEGAL STANDARDS

The Equal Access to Justice Act ("EAJA") provides that the court shall award attorney fees and expenses to a prevailing party in any civil action brought by or against the United States unless the court finds that the government's position was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

## DISCUSSION

Federal defendants make several arguments in opposition to plaintiffs' fee request. They first argue that this Court lacks jurisdiction to consider the motion. They also contend that plaintiffs are not the prevailing party and that federal defendants' position was substantially justified. Finally, and alternatively, they contend that plaintiffs' request is not reasonable.

I. <u>The Court has Subject Matter Jurisdiction Over Plaintiffs' Fee Request</u>

Federal defendants assert that this Court lacks subject matter jurisdiction over plaintiffs' fee request because the case is moot. The only decision in this district upon which federal defendants rely is <u>Klamath Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.</u>, Civ. No. 05-3094-CL, slip op. at 4-5 (D. Or. filed Aug. 6, 2007) (Findings & Recommendation denying plaintiffs' application for EAJA fees). In that decision, as one basis for its rejection of plaintiffs' attorney fee petition, the court concluded without analysis that because the case had been rendered moot by the time plaintiffs filed the fee request, the court must deny the petition.

I am not persuaded by that decision. In the Ninth Circuit, the requirement that jurisdiction exist in order to award fees is met if jurisdiction existed when the case was filed. <u>Cf. Clark v. Busey</u>, 959 F.2d 808 (9th Cir. 1992) (filed in wrong court, no jurisdiction to award fees)

with United States v. 87 Skyline Terrace, 26 F.3d 923, 927-29 (9th Cir. 1994) (court that had "potential, but lack[ed] actual jurisdiction," could award fees).

Here, at the time plaintiffs incurred the fees, this Court had jurisdiction over the case, rendered an Opinion and Order and judgment granting plaintiffs' motion for summary judgment, and found federal defendants in violation of the Endangered Species Act. It was only after federal defendants issued new consultation documents that this Court's decision was rendered moot. Accordingly, pursuant to 87 Skyline Terrace, this Court has subject matter jurisdiction to award fees.

II.     Plaintiffs are the Prevailing Party

Federal defendants next argue that plaintiffs are not the prevailing party. I find Watson v. County of Riverside, 300 F.3d 1092, 1095 (9th Cir. 2002) guides my decision here. In that case, plaintiff was the prevailing party because he obtained a preliminary injunction prohibiting the defendant from introducing a report at his administrative termination hearing, even though he lost on the merits and his request for permanent injunction became moot once the administrative hearing came to a close. The Ninth Circuit explained:

> A preliminary injunction issued by a judge carries all the "judicial imprimatur" necessary to satisfy Buckhannon [Board and Care Home, Inc. v. West Virginia Dept. of Health, 532 U.S. 598 (2001)]. In this case, the County was prohibited from introducing Watson's report at the termination hearing for one reason and for one reason only: because Judge Timlin said so. . . . And under Buckhannon, he was not a mere catalyst of an extra-judicial voluntary change in conduct. There was nothing voluntary about the County's inability to use the report.
>
> We recognize that there will be occasions when the plaintiff scores an early victory by securing a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against him–a case of winning a battle but

> losing the war. The plaintiff would not be a prevailing party in that circumstance. But this case is different because Watson's claim for permanent injunctive relief was not decided on the merits. The preliminary injunction was not dissolved for lack of entitlement. Rather, Watson's claim for permanent injunction was rendered moot when his employment termination hearing was over, after the preliminary injunction had done its job.

300 F.3d at 1096.

Here, plaintiffs obtained a judgment on the merits in their favor. Just as in Watson, I did not vacate the judgment "for lack of entitlement." Id. Rather, plaintiffs' case was "rendered moot" when federal defendants issued new consultation documents, "after" the judgment "had done its job." Id. From April 17 to May 31, plaintiffs obtained court-ordered "relief on the merits [which] materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ted] the plaintiff[s]." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).

The case upon which federal defendants rely, Sole v. Wyner, 127 S. Ct. 2188 (2007), is not applicable and does not undermine the holding in Watson. In Sole, the Supreme Court concluded a party did not prevail if it obtained a preliminary injunction, but later lost on the merits. Here, however, plaintiffs won on the merits and in time for the decision to affect federal defendants' behavior.

Federal defendants argue that the later-vacated judgment is somehow too "fleeting" and "ephemeral" a success to have earned plaintiffs prevailing party status, but, as plaintiffs point out, NMFS' 2007-2011 BiOp appears to directly address some of the errors I pointed out in my analysis of the 2006 BiOps. For example, the 2007-2011 BiOp appears to have addressed my criticism that the 2006 BiOps did not contain specific and binding mitigation measures. ONDA

Page 6 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

v. Lohn, 485 F. Supp. 2d 1190, 1201 (D. Or. 2007) (citing Center for Biol. Diversity v. Rumsfeld, 198 F. Supp. 2d 1139, 1152 (D. Ariz. 2002), Sierra Club v. Marsh, 816 F.2d 1376, 1379-80 (9th Cir. 1987), and National Wildlife Fed'n v. NMFS, 481 F.3d 1224 (9th Cir. 2007)). The language in the 2006 BiOps that I found to be in violation of the Endangered Species Act was as follows:

> "With *excessive, repeated* failures, 'permit action' to remedy the situation *may be* warranted for resource protection," and "[f]ailure to meet move trigger/move indicators due to permittee lack of knowledge, effort or engagement *could* be rectified through firm, fair administration of the grazing permit and reflected in the next year's annual operating instructions."

ONDA, 485 F. Supp. 2d at 1201 (quoting NAR 1 at 7, 8; NAR 2 at 6, 7). In contrast, the language appearing in the 2007-2011 BiOp reads as follows:

> Under existing Forest Service statutes and regulations, the MNF has full authority to ensure compliance with allotment conservation measures. Consistent with this authority, the MNF will hold permittees accountable for compliance with the requirements of their grazing permits and annual instructions. Should move triggers be exceeded, the MNF has a full range of remedial and disciplinary actions that may be taken depending upon the severity of the non-compliance. At a minimum, however, the MNF will document any non-compliance, discuss it with the permittee, and develop and implement a strategy for the particular unit to ensure move trigger compliance in the future.

Reply in Supp. of Defs.' Mot. to Alter or Amend the Court's Final J., Ex. A at 121-22.[1]

Furthermore, where before NMFS failed to describe effects of grazing on an allotment specific basis, it now appears to have included such a detailed analysis. In addition, NMFS has now attempted to comply with my demand that it evaluate the proposed "action in the context of the 'life cycle and migration cycle of anadromous fish.'" ONDA, 485 F. Supp. 2d at 1200

---

[1] I have used the PDF page numbers throughout this Opinion when referring to the 2007-2011 consultation documents.

(quoting Pacific Coast Fed'n of Fishermen's Ass'ns, Inc. v. NMFS, 265 F.3d 1028, 1037 (9th Cir. 2001), Pacific Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation, 426 F.3d 1082, 1094 (9th Cir. 2005), and National Wildlife Fed'n, 481 F.3d 1224); see Notice re Defs.' Mot. to Alter or Amend the Court's Final J., Ex. 1 at 17.

Federal defendants assert that any change in the 2007-2011 consultation documents is not a response to the Opinion and Order, but is merely their attempt to address "the criticisms in Plaintiffs' Complaint and summary judgment briefs" and the analysis in National Wildlife Fed'n. upon which I relied.

I reject federal defendants' suggestion that even though they denied the material allegations in plaintiffs' Complaint, and argued vehemently in support of their own motion and in opposition to plaintiffs' motion for summary judgment, they voluntarily revised the 2007-2011 consultation documents to address the criticisms raised by plaintiffs. Furthermore, although it is to be expected that federal defendants attempt to comport with new Ninth Circuit precedent, much of the law I cited predated National Wildlife Fed'n, so not all of the improvements in the 2007-2011 consultation documents can be attributed to that decision.

III.     Federal Defendants' Position was not Substantially Justified

Federal defendants argue that plaintiffs are not entitled to fees because the positions NMFS and FWS took with respect to this litigation were substantially justified. The test for determining whether the government was substantially justified is whether its position had a reasonable basis both in law and fact. Pierce v. Underwood, 487 U.S. 552, 565 (1988); Flores v. Shalala, 49 F.3d 562, 569-70 (9th Cir. 1995). The burden is on the government to prove

substantial justification.  Flores, 49 F.3d at 569-70.  Substantial justification means justified to a degree that could satisfy a reasonable person.  Bay Area Peace Navy v. United States, 914 F.2d 1224, 1230 (9th Cir. 1990).  In evaluating the government's position, the court must look at both the underlying government conduct and the positions taken by the government during the litigation.  Id.

Federal defendants contend that because they insisted the case was moot from the outset, and because they were successful on that issue "on reconsideration," their litigation position was substantially justified.  In addition, they point out that plaintiffs did not prevail on their challenge to FWS' no jeopardy conclusion, and that I relied extensively on two cases that were issued while the motions for summary judgment were under advisement, National Wildlife Fed'n and Oregon Natural Res. Council v. Allen, 476 F.3d 1031 (9th Cir. 2007).

I reject federal defendants' suggestion that I "reconsidered" my decision on the mootness issue.  Instead, I was required to evaluate federal defendants' assertion that they had "prepared and have now completed five-year consultation documents covering the effects of grazing[,]" and what impact such new consultation documents had on my analysis of the mootness issue.  Reply in Supp. of Defs.' Mot. to Alter or Amend the Court's Final J. at 1.  I had earlier concluded that what was at the time only an "expectation that subsequent BiOps will be five years in duration" was not "sufficient assurance" that plaintiffs could obtain judicial review before the challenged action ceased.  ONDA, 485 F. Supp. 2d at 1197.  As a result, I employed an exception to the mootness doctrine and found the action capable of repetition yet evading review.  With the issuance of five-year consultation documents, however, the holdings in American Rivers, 126

Page 9 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

F.3d 1118 and Idaho Dep't of Fish & Game, 56 F.3d 1071 required me to find the case moot. Based on these facts, the mootness issue was resolved in federal defendants' favor only because they were able to issue new consulting documents in time to render the case moot, not because of their legal argument at the outset of the case.

With respect to federal defendants' second point, as is apparent from my analysis of plaintiffs' prevailing party status, I relied on a number of cases other than the new Ninth Circuit cases issued while this case was under advisement. Furthermore, the fact that it succeeded in defending FWS' jeopardy analysis, does not affect my conclusion that federal defendants' position was not substantially justified overall. See United States v. Marolf, 277 F.3d 1156, 1163-64 (9th Cir. 2002) ("partly reasonable litigation position" did not preclude conclusion that not substantially justified overall).

IV.     An Adjustment to the Fee Request is Appropriate

I reject federal defendants' contention that plaintiffs should be awarded no or low fees because their success was "technical or *de minimus*." Farrar, 506 U.S. at 117. Rather, I find plaintiffs achieved a modification of federal defendants' behavior, as I have indicated above.

Nevertheless, federal defendants point out that while the rates requested by plaintiffs are reasonable, plaintiffs have included hours for which they should not recover. I reduce the fee award by $2,210.39, which represents fees expended in opposing federal defendants' Motion to Alter or Amend the Judgment, and in support of their Motion to File a Supplemental Complaint, both of which plaintiffs lost and which are costs that can be easily subtracted from the fee request. In addition, I agree with federal defendants that the amount of hours spent drafting and

editing the Complaint was somewhat excessive. As a result, I subtract $2,500 from the fee request. I reject federal defendants' remaining objections.

Plaintiffs are entitled to $75,761.03.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Attorney Fees and Costs (#80) is granted in part and denied in part. Plaintiffs are entitled to $75,761.03 in attorneys' fees and costs pursuant to EAJA.

IT IS SO ORDERED.

Dated this _____9th_____ day of November, 2007.

           /s/ Garr M. King
           Garr M. King
           United States District Judge